886 So.2d 1258 (2004)
Joseph Rodney QUIBODEAUX, et al.
v.
Bruce Roland ANDRUS, et al.
No. 04-766.
Court of Appeal of Louisiana, Third Circuit.
November 10, 2004.
*1259 Stanford B. Gauthier, II, Lafayette, LA, for Plaintiff-Appellant, Joseph Rodney Quibodeaux, Sadie Guillot Quibodeaux, Allen J. Quibodeaux, Lawrence LeJeune, and Jules LeJeune.
Jade R. Andrus, Lafayette, LA, for Defendant-Appellee Bruce Roland Andrus and Patricia Smith Andrus.
Court composed of JIMMIE C. PETERS, MICHAEL G. SULLIVAN, and JOHN B. SCOFIELD, Judges.
SCOFIELD, Judge.[*]
Plaintiffs, Joseph Rodney Quibodeaux, Sadie Guillot Quibodeaux, Allen J. Quibodeaux, Lawrence LeJeune, and Jules LeJeune (hereinafter referred to as "Quibodeaux"), have sued Bruce Roland Andrus and Patricia Smith Andrus (hereinafter referred to as "Andrus"), alleging a breach of a settlement agreement arising out of an earlier lawsuit involving the rights of the parties pursuant to an irrigation canal right-of-way agreement dated February 9, 1961. For the reasons set forth below, we affirm the trial court's judgment in favor of Andrus.

FACTS AND PROCEDURAL HISTORY
On February 9, 1961, Quibodeaux's ancestors in title granted to Andrus "a right-of-way easement to construct, maintain, operate, repair one rice irrigation canal for the transportation of water, together with the right of ingress and egress, over, through and across" certain specifically described parcels of land owned by Quibodeaux. As consideration for this grant, the agreement provides for Andrus to pay Quibodeaux $50.00 per annum, "together with personal benefits and gains they will derive" from the canal. The canal serves to irrigate the lands of the Quibodeauxs as well as other lands owned or farmed by Andrus. For a number of years, Andrus farmed the Quibodeaux property upon which the canal is situated.
*1260 Tensions between the parties apparently began when Andrus ceased farming the Quibodeaux property. Eventually, a lawsuit was filed by Quibodeaux to cancel the canal grant. Before trial, that lawsuit was compromised and settled in a handwritten agreement which is the basis for the instant lawsuit. In the settlement agreement, the parties essentially agreed as follows:
1. The February 9, 1961 irrigation canal right-of-way was recognized as being effective;
2. Andrus was to knock down the height of the canal's outside levees by 50%, and the inside levees would be "spread approximately level with the immediate area;"
3. The canal itself would be maintained to occupy an area twenty feet or less in width, including the canal's banks; and,
4. The canal would be maintained so that no trees would be allowed to grow in the canal area and existing trees would be poisoned or cut, and then stacked.[1]
Quibodeaux filed the present lawsuit contending Andrus breached the settlement agreement. Andrus filed a general denial answer and filed a reconventional demand seeking damages for Quibodeaux's placing an "obstruction" in the canal. At the trial, it was found that the alleged obstruction was a four-foot drainage culvert placed in the canal which permitted the continued flow of water in the canal but which facilitated the construction of a passageway from one side of the canal to the other.
After a bench trial, the trial court found that Andrus had complied with all provisions of the settlement agreement with the exception that the inside levees had not been adequately leveled. In its judgment, the trial court gave Andrus until August 1, 2004 to achieve the proper leveling of the inside levees. All other claims, including Andrus' reconventional demand against Quibodeaux for allegedly obstructing the canal, were dismissed. Quibodeaux alone appeals, the appeal being limited to the trial court's extending the time limit for Andrus to level the inside levees and its failure to dissolve the canal right-of-way agreement.

DISCUSSION
The issue in this appeal is very narrow: Did the trial court have the legal authority to extend the deadline from April 1, 2000 to August 1, 2004 for Andrus to level the inside levees? Quibodeaux persistently contends that the settlement agreement, as well as the initial 1961 canal right-of-way agreement, is a lease. If the settlement agreement can be considered a lease, then Quibodeaux urges the applicability of the Louisiana Civil Code's lease provisions, particularly Article 2729[2] which provides:
The neglect of the lessor or lessee to fulfill his engagements, may also give cause for a dissolution of the lease, in the manner expressed concerning contracts in general, except that the judge can not order any delay of the dissolution.
Quibodeaux argues that the trial court violated the law pertaining to this settlement "lease" by ordering a "delay in the dissolution" thereof.
*1261 The compromise agreement is not a lease. It is just what it purports to be: a simple contractual settlement of a lawsuit. While a lease is a contract, it is a special contract whereby "one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." La.Civ.Code art. 2669[3]. Here, in addition to acknowledging the existence of the canal right-of-way, the settlement agreement simply spells out that to which the parties have agreed in order to settle their lawsuit. It is not a document in which a party gives a "thing" or "his labor" to another for a "fixed price."
Louisiana Civil Code Article 3071, in pertinent part, defines a compromise as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
A compromise is the law between the parties and is to be interpreted according to the intent of the parties. Ryland v. St. Mary's Residential Training School, 03-0027 (La.App. 3 Cir. 4/30/03), 843 So.2d 1237, writ denied, 03-1536 (La.10/3/03), 855 So.2d 311.
Of more importance to the discussion here is that the compromise agreement "is subject to the normal rules of contract analysis." Randall v. Martin, 03-1311 (La.App. 5 Cir. 2/23/04), 868 So.2d 913, 916. This means that special rules peculiarly applicable to a contract of lease, such as La.Civ.Code art. 2729, are not germane to the interpretation of compromise agreements.
The focus of this lawsuit is on the settlement agreement. The settlement agreement is an adjunct to the original 1961 grant which Quibodeaux also styles as a lease. Presumably, by characterizing the 1961 grant as a lease, Quibodeaux hopes to strengthen the argument that the settlement agreement is itself a lease, or constitutes a modification of the existing "lease." We, however, view the 1961 grant to be a predial servitude rather than a lease. The heading of the document identifies itself as an "Irrigation Canal Right-of-Way." In the body of the document, Quibodeaux grants to Andrus a "right-of-way easement" for the canal. In the document, the parties themselves are referred to as "Grantor" and "Grantee" rather than "Lessor" and "Lessee." Our law has long recognized that a "right-of-way" is a predial servitude. El Paso Field Serv., Inc. v. Minvielle, 03-1293 (La.App. 3 Cir. 3/3/04), 867 So.2d 120; see also Bidstrup v. Brignac, 93-537 (La.App. 3 Cir. 2/2/94), 631 So.2d 637. It is also uniformly accepted in the law of Louisiana that the common law word "easement" is the same as the Louisiana "servitude." See Arkansas La. Gas Co. v. La. Dept. of Highways, 104 So.2d 204 (La.App. 2 Cir.1958). There is no question that the 1961 agreement granted to Andrus the enjoyment of a "thing," i.e., the use and enjoyment of the canal. To be classified as a lease of a thing, La.Civ.Code art. 2674 provides:
To let out a thing is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him.
(Emphasis added.)
The 1961 grant did not set forth a "certain time" in which Andrus would enjoy *1262 the canal. The grant contains no term. The grant, therefore, does not qualify as a lease of a thing pursuant to La.Civ.Code art. 2674. The fact that the grant contains no term is typical of a servitude.
Having decided that neither the settlement agreement nor the 1961 grant can be classified as a lease, we find that the settlement agreement is a conventional obligation and it is subject to being interpreted as such.
The trial court found that Andrus had complied with a substantial part of the settlement agreement. Andrus satisfactorily removed the outside levees, maintained the width of the canal to twenty feet or less, and removed the trees from the right-of-way. The only aspect of the settlement agreement with which Andrus did not fully comply is the leveling of the inside levees to "approximately" the same level as the surrounding area. Even this finding by the trial court was apparently a close call because the record reveals that Andrus did reduce the height of the inside levees to a degree that was not insignificant. In other words, Andrus did attempt to comply with the settlement agreement in leveling the inside levees, but these efforts did not quite measure up to the satisfaction of the trial court. Consequently, the trial court gave Andrus additional time to complete this task.
The Louisiana Civil Code's provisions addressing the dissolution of conventional obligations or contracts are found in Chapter 9 of Title 4 of the Code. Pertinent to this case are the provisions of Article 2014 of the Code which provides as follows:
A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee.
There is no question that Andrus performed a "substantial part" of that which was required under the settlement agreement. In granting Andrus additional time within which to perform the relatively minor task of leveling the inside levees, the decision of the trial court is not only amply supported by the law, it is eminently fair and just. To dissolve this servitude after its being in existence for over forty years and to deprive the Andrus-farmed acreage of water solely because of the failure to exactly satisfy the requirement to reduce the inside levees to "approximately the same level of the surrounding area," would be a grave injustice indeed.
For these reasons, we affirm the decision of the trial court and all costs of this appeal are to be assessed against Quibodeaux.
AFFIRMED.
NOTES
[*] Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The settlement agreement itself is undated, but it was filed in the record of this case on December 6, 1999.
[2] Louisiana Civil Code arts. 2729 and 2669 were amended by the 2003 session of the Louisiana Legislature. All referenced to these articles herein are to the articles as the provided at the times pertinent to this action rather than to the amended articles.
[3] See Footnote 2.